# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| CHAD HELMS, on behalf of himself and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| BIMBO BAKERIES USA, INC. and, BIMBO FOODS BAKERIES DISTRIBUTION, LLC | ) ) ) ) |
| Defendants. | ) ) ) |

CIVIL ACTION NO: _____

## CLASS ACTION AND INDIVIDUAL COMPLAINT

I.  INTRODUCTION

This is an action brought on behalf of individuals who are current and former delivery drivers or "Distributors" of Defendants Bimbo Bakeries USA, Inc. and Bimbo Foods Bakeries Distribution, LLC (together, "Bimbo" or "Defendants") challenging the unlawful misclassification of them as independent contractors instead of employees. Plaintiff asserts claims on his own behalf and a class of all other Maine "Distributors" pursuant to Rule 23 for violations of the Maine's wage payment and deductions statute, 26 M.R.S.A. §629, and Maine's overtime statute, 26 M.R.S.A. §664. Plaintiff also asserts an individual claim for violations of the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

II.   PARTIES

1.   Plaintiff Chad Helms[1] is an adult resident of Minot, Maine. Since approximately June 2013 to May 2020,[2] Helms has delivered breads and baked goods on behalf of Defendants in Maine. During the relevant time, he was Defendants' employee as that term is defined under Maine law and the FLSA.

2.   Defendant Bimbo Bakeries USA, Inc. is a corporate entity with its headquarters in Horsham, Pennsylvania. Defendant Bimbo Bakeries USA, Inc. conducts business through distribution facilities across the United States.

3.   Defendant Bimbo Foods Bakeries, LLC is corporate entity with its headquarters in Horsham, Pennsylvania.  It conducts business through distribution facilities across the United States.

4.   Defendants are engaged in interstate commerce and employ individuals engaged in interstate commerce and are therefore covered by the FLSA, and they are "employers" as that term is defined under Maine's statutes.

III.   JURISDICTION AND VENUE

5.   The Court has original jurisdiction over the FLSA claims asserted in this matter pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6.   The Court has supplemental jurisdiction over the state law claims pursuant to 28

---

[1]   The named Plaintiff originally filed opt-in consent forms to participate in an FLSA collective action in the District of New Hampshire, Camp v. Bimbo Bakeries, et al., C.A. No. 1:18-cv-00378-SM (D.N.H.). Upon Defendants' Motion, Judge McAuliffe dismissed the opt-in plaintiffs who worked outside of New Hampshire, finding that there was no personal jurisdiction over Defendants in that forum for the claims of out-of-state plaintiffs.  Plaintiff is therefore filing his claims here in Maine where he resides and works for Bimbo Bakeries, where a substantial part of the events giving rise to this action occurred, and where the Defendants are subject to personal jurisdiction.

[2]   Under Maine law, the relevant statute of limitations is six years. See 14 M.R.S.A. § 752.

U.S.C. § 1367.

7. The Court also has jurisdiction over this Action pursuant to 28 U.S.C. § 1332(a) and (d) where the parties are citizens of different states and the amounts in controversy exceed the statutory amounts.

8. Venue in this forum is proper pursuant to 28 U.S.C. §§ 1391(a) and (b), because a substantial part of the events giving rise to this action occurred in this District and the Defendant is subject to personal jurisdiction in this District.

IV. STATEMENT OF FACTS

9. The business of Defendants and their affiliates consists of delivering breads and baked goods to grocery stores and other outlets across the United States under the brand names Sara Lee, Nature's Harvest, and others.

10. Defendants pay workers including Plaintiff to deliver and distribute these breads and baked goods within specific geographic regions unilaterally determined by Defendants and these areas are referred to as "routes" or "territories."

11. Defendants refer to these individuals as "Distributors" or "IBPs."

12. Plaintiff worked for Defendants in Maine.

13. The duties of Plaintiff and other Distributors entail, at least in part, driving vehicles weighing less than 10,000 pounds because, for example, Plaintiff and others often visit stores in their personal vehicles to drop off small orders of products and to arrange displays.

14. On a typical week, Distributors such as the named Plaintiff work at least forty hours per week delivering the baked goods for Defendants. This work mainly consists of driving vehicles to stores within a territory designated by Bimbo, delivering Bimbo's products to these stores, and arranging the products on the shelves according to Bimbo's display standards.

15. Plaintiff Helms generally worked approximately 45 to 50 hours per week and has

sometimes worked 60 to 65 hours per week for Defendants.

16. Defendants treat Plaintiff and other IBPs as independent contractors, claiming that they are not entitled to the protections of state and federal employment laws.

17. Nevertheless, the work of Plaintiff and other IBPs is part of Defendants regular business and their work is integral to Defendants' baked goods distribution business, and Defendants also directly employ delivery drivers who perform the same work for Defendants but who are treated as W2 employees.

18. In order to work for Defendants, Plaintiff and other IBPs were required to pay a substantial sum of money to purchase purported "Distribution Rights".  Most IBPs finance these purchases through loans facilitated by Defendants (often via Advantafirst Capital Financial Services, LLC, which is a wholly-owned subsidiary of Defendants' parent company).

19. Plaintiff and other IBPs are not engaged in independent businesses or distinct callings. Rather, Plaintiff and IBPs generally work exclusively for Defendants and (where applicable) their associated corporate entities generally exist for the sole purpose of working for Defendants. In fact, Plaintiff and other IBPs are prohibited from performing any similar delivery work for another company.

20. Defendants exercise virtually unlimited control over Plaintiff's and IBP's work, dictating all prices, requiring Plaintiff and IBPs to deliver to stores that are not profitable, employing supervisors who travel to stores in Plaintiff' territories to review their work, and threatening to terminate Plaintiff and IBPs whose work does not satisfy Defendants' standards. On May 21, 2020, Defendants unilaterally terminated its working relationship with Plaintiff Helms due to alleged unsatisfactory work.

21. Defendants unilaterally determine the "price" that its customers (i.e., the grocery

stores) must pay Defendants for the products that IBPs are required to deliver to Defendants' customers.

22. Defendants then pay Plaintiff and other IBPs compensation for their distribution services each week, in an amount roughly equal to the difference between the amount of money that Defendants' customers pay for products and the amount of money that Defendants purport to "charge" Distributors for Defendants' products.

23. Indeed, Defendants have directly paid weekly compensation to Plaintiff and other IBPs pursuant to the arrangement described above during the relevant statutory period as direct compensation for their delivery services.

24. Plaintiff and other IBP's routinely work more than forty hours per week, and they are not paid any "time-and-a-half" overtime premium for their hours worked over forty.

25. Each week, Defendants also make deductions from the earnings of Plaintiff and other IBPs. These deductions are itemized on weekly "settlement sheets" and include, *inter alia*, deductions for route loan repayments, use of Defendants' electronic equipment, lost or stolen product that is never purchased at retail locations, insurance coverage that benefits Defendants, supplies, truck lease payments, penalties for returning too much stale product to Defendants, and other fines and penalties.

26. In addition, Plaintiff and other IBPs regularly incur work-related expenses for, *inter alia*, gas, vehicle maintenance/repair, and insurance. Defendants do not reimburse Plaintiff and other IBPs for such expenses, which are directly related to the work Plaintiff and other IBPs perform for Defendants.

27. Defendants' misclassification of its delivery drivers as independent contractors and the additional violations of Maine law described above were willful and undertaken in bad

faith because, among other reasons, delivery drivers who provide identical services as Plaintiff have been held to be employees of Defendants. See Matter of Cowan, 159 A.3d 1312 (N.Y. App. Div. 2018) (holding that Bimbo Bakeries "exercised sufficient supervision, direction and control over [IBP] to establish an employer-employee relationship under common-law principles.").

V.     CLASS ACTION ALLEGATIONS

28.    Plaintiff brings this action under Federal Rule of Civil Procedure 23 on behalf of the following proposed class:

> All individuals who, either individually or through a corporate entity, personally deliver or have delivered Defendants' products as a Distributor or IBP during the relevant statutory period from a warehouse location in Maine, excluding *only* those who have filed arbitration demands asserting Maine wage claims prior to the filing of this complaint.

29.    Upon information and belief, there are more than forty members of the class. The members of each class are so numerous that joinder of all of them is impracticable, and treatment of a class action is the superior method to adjudicate the class members' claims.

30.    There are issues of law and fact common to all class members because Defendants have misclassified them as independent contractors rather than as employees and have unlawfully deprived them of the wages and overtime pay to which employees are entitled. These questions of law and fact predominate over any questions affecting only individual class members.

31.    Plaintiff and class counsel will fairly and adequately represent the interests of the class.

## COUNT I

<u>(Overtime under 26 M.R.S.A. §664 on behalf of the Class)</u>

32. Under the Maine Minimum Wage and Overtime Law, 26 M.R.S.A. §664(3)(H), Plaintiff Helms and the members of the Maine Class are employees of Defendants and, therefore, are entitled to overtime. As set forth above, Defendants did not pay them any overtime premium for hours worked over forty. Pursuant to 26 M.R.S.A. §670, the Plaintiff and Maine Class members are entitled to the amount of overtime which is owed to them and which is unpaid in addition to an amount equal to such overtime due as liquidated damages plus the cost of suit and reasonable attorneys' fees.

## COUNT II

<u>(Unlawful Deductions under 26 M.R.S.A. §629 on behalf of the Class)</u>

33. As stated above, Plaintiff Helms and the members of the class were required to incur certain wage deductions and expenses related to their work for Defendants, all of which benefitted Defendants. Specifically, in their weekly "settlement, statement" or paycheck, the Defendants deduct certain expenses as a condition of the Plaintiffs being able to retain and secure their work with Defendants, including deductions for route loan repayments, use of Defendants' electronic equipment, lost or stolen product that is never purchased at retail locations, insurance coverage that benefits Defendants, supplies, truck lease payments, penalties for returning too much stale product to Defendants, and other similar deductions. These deductions are in violation of 26 M.R.S.A. § 629. In addition, Defendants passed along certain work-related expenses to Plaintiff Helms and the Maine Class members without reimbursement, including, *inter alia*, gas, vehicle maintenance/repair, and insurance, also in violation of 26 M.R.S.A. § 629.

## COUNT III

### (Individual FLSA Claim)

34. The FLSA requires that employees receive overtime premium compensation calculated at 150% of their regular pay rate for all hours worked over 40 per week. *See* 29 U.S.C. § 207(a)(1). Defendants are employers required to comply with the FLSA's overtime pay mandate, and Plaintiff is an employee entitled to the mandate's protections.

35. Defendants violated the FLSA by failing to pay Plaintiff overtime premium compensation for hours worked over 40 per week.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this honorable Court to enter the following relief:

A. An Order certifying the class defined herein comprised of similarly situated individuals pursuant to Fed. R. Civ. P. 23;

B. An award of damages for all unpaid wages, expenditures, costs, deductions, benefits, or other losses resulting from Defendants' misclassification, as described above (on a class basis under State law and individually under the FLSA);

C. Restitution of the payments made by Plaintiff and class members in order to purchase their routes, and all other business expenses born by Plaintiff and class members on behalf of Defendants, in an amount sufficient to make them whole;

D. Statutory liquidated damages, pursuant to applicable state and federal law;

E. Attorneys' fees and costs; and

F. Such other legal and equitable relief as the Court deems just and proper.

Dated: June 11, 2020            Respectfully submitted,

CHAD HELMS on behalf of himself and all others similarly situated

By his attorneys,

 /s/ Benjamin I. Grant_____
Benjamin I. Grant (Bar No. 3355)
Kaplan & Grant
136 Commercial Street, Suite 302
Portland, Maine 04101
(207) 780-6700
bgrant@kaplanandgrant.com

AND

Harold L. Lichten (*pro hac vice* admission anticipated)
Matthew W. Thomson (*pro hac vice* admission anticipated)
Zachary L. Rubin (*pro hac vice* admission anticipated)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St. Suite 2000
Boston, MA 02116
(617) 994-5800
Fax (617) 994-5801
hlichten@llrlaw.com
mthomson@llrlaw.com
zrubin@llrlaw.com