**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| _____ ) | |
| CHAD HELMS, ) | |
| on behalf of himself and all ) | |
| others similarly situated, ) | CIVIL ACTION NO: 2:20-CV-00207-LEW |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BIMBO BAKERIES USA, INC. and, ) | |
| BIMBO FOODS BAKERIES ) | |
| DISTRIBUTION, LLC ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

I.     **INTRODUCTION**

In this wage and hour class action, Plaintiff and class members are delivery drivers who work full-time delivering breads and baked goods for Defendants Bimbo Bakeries USA, Inc. and Bimbo Bakeries Distribution, LLC (collectively, "Bimbo").  Defendants determine the territory in which the Plaintiff and other drivers work and the prices for all products that are delivered, and require Plaintiffs and other drivers to comply with specific requirements regarding the frequency of deliveries, removal of stale product from stores' shelves, and the manner in which products are displayed at each store.  Defendants also prohibit Plaintiffs from working outside of their territory or from working for any competitor of Bimbo, ensuring that they exclusively perform food delivery work for Defendants.  Despite this pervasive control over Plaintiffs' work, Bimbo labels the Plaintiffs as non-employee "independent contractors" and denies them all protections of state and federal employment laws.  Plaintiff alleges that he and other drivers were misclassified, that they were actually Bimbo's employees, and that Defendants violated that FLSA and Maine wage laws by failing to pay them any overtime wages.[1]

---

[1]     This case is like many others that have been filed against Bimbo or similar baked goods and snack companies.  See, e.g., Noll v. Flowers Foods Inc., 442 F. Supp. 3d 345 (D. Me. 2020), Camp v. Bimbo Bakeries USA, Inc., 2019 WL 1472586, at *1-*3 (D.N.H. Apr. 3, 2019); Mejia v. Bimbo Bakeries USA, Inc., 2017 WL 6415357, at *3 (D. Ariz. Aug. 14, 2017) (conditional certification of FLSA collective comprised of Bimbo delivery drivers); Alfred v. Pepperidge Farm, Inc., 322 F.R.D. 519 (C.D. Cal. 2017) (granting class certification to group of Pepperidge Farm deliver drivers asserting claims for unpaid wages based on misclassification as independent contractors); Tavares v. S-L Distribution Co., 2016 WL 1743268, at *5 (M.D. Pa. May 2, 2016) (class action settlement on behalf of Snyder Lance pretzel deliver drivers who, like Bimbo drivers, are required to purchase their "route" and are treated as independent contractors); Rehberg v. Flowers Baking  Co. of Jamestown, LLC, 2015 WL 1346125, at *19 (W.D.N.C. Mar. 24, 2015) (granting class certification to group of Wonderbread delivery drivers who were required to purchase their "route" and are treated as independent contractors); Scott v. Bimbo Bakeries, USA, Inc., 2012 WL 645905, at *10 (E.D. Pa. Feb. 29, 2012) (granting conditional certification to FLSA collective of Bimbo delivery drivers).

In responding to Plaintiff's Complaint, Bimbo has asserted baseless counterclaims of "unjust enrichment," breach of contract, and a related breach of implied covenant of good faith claim.  See Dkt. 13, Counterclaims I-III.  The counterclaims seek to recoup amounts from Plaintiff's unpaid wage damages if they are successful in this action because, according to Bimbo, it would have paid Plaintiff less had it known that he and others would assert their rights under the wage laws and ultimately be deemed to be "employees."  See, e.g, Dkt. 13 at ¶¶ 24-41 (claiming, among other things, that Plaintiff has acted in bad faith and breached his agreement with Defendants by filing this lawsuit asserting his rights under the wage laws).  Defendants' counterclaim is specifically contingent on Plaintiff succeeding on his claims and the Court (or a jury) finding that Defendants violated the FLSA; in the event that this occurs, Defendants believe that they are entitled to recover damages in equity *as a result of their own violations of the FLSA and Maine's wage laws*.  See id.  Thus, with these counterclaims and third party complaints, Defendants take the unprecedented position that if Defendants are found to violate Plaintiffs' rights under the FLSA, it is actually Defendants - *as the employers* - who have been harmed by their own violations of federal law and who are entitled to thousands of dollars in damages, likely in amounts that would dwarf any award of damages awarded to Plaintiff.  More shockingly, Bimbo asserts these counterclaims even though Judge McAuliffe of the District of New Hampshire has already dismissed identical "counterclaims" in a wage case brought by Bimbo's delivery drivers in New Hampshire, finding that the counterclaims had no legal basis and dismissing them for failing to state a claim for relief.  See Camp v. Bimbo Bakeries USA, Inc., 2019 WL 1472586, at *1-*3 (D.N.H. Apr. 3, 2019).  The counterclaims in this case similarly fail as a matter of law.

In fact, just like Judge McAuliffe, courts routinely dismiss "unjust enrichment" and other baseless counterclaims in FLSA wage cases on a Rule 12(b)(6) motion, because dismissing the claims (rather than allowing the claims to linger in the case) is consistent the public policy underlying the FLSA.  See Fernandez, 2014 WL 12778829, at *3 (E.D.N.Y. Feb. 5, 2014) (where putative employer brought counterclaims against workers on the theory the employer could recover damages from the employees in an FLSA action, dismissing counterclaim that "contravene[d] the remedial purposes of the FLSA….") (also observing "that policy considerations underlying the FLSA" applied even "at this early stage of the litigation").  This is because there are no facts that could be developed in discovery that would support Defendants' theories of recovery; for example, there is no set of facts by which Defendants could demonstrate that Plaintiffs were enriched "unjustly" at Defendants' expense as a result of Defendants misclassifying them in violation of the FLSA, nor are there any set of facts by which Bimbo could demonstrate that Plaintiff has acted in breach of his agreement with Bimbo by asserting his rights under the FLSA (rights that cannot be waived or abridged by private contract).  See Camp v. Bimbo Bakeries USA, Inc., 2019 WL 1472586, at *2 (D.N.H. Apr. 3, 2019) (dismissing identical counterclaims and observing that "'[u]njust enrichment' is simply a poor fit to the facts alleged in this case.").  As Judge McAuliffe has held when Defendants asserted the identical "unjust enrichment" counterclaims against the drivers that have been asserted here, there is "no established principle of employment law" that would render Plaintiffs' retention of the sums they earned while working for Defendants' "unjust."  See Camp v. Bimbo Bakeries USA, Inc., 2019 WL 1472586, at *2-*3 (D.N.H. Apr. 3, 2019) (holding that Bimbo's "counterclaim fails to plausibly allege the essential elements of a viable common law claim for unjust enrichment against plaintiffs").

The counterclaims and third-party complaints should be dismissed in this case, for the following reasons:

First, counterclaims that seek to "recoup" and "offset" a plaintiff's damages award in an FLSA case – or by which a defendant otherwise seeks indemnification for a potential damages award - are prohibited by the FLSA.  See Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 144 (2d Cir. 1999) (holding that "that there is no right to contribution or indemnification for employers held liable under the FLSA" and that state law counterclaims that would disrupt the FLSA's remedial scheme are impermissible because the FLSA "strongly counsels against judicially engrafting additional remedies" in favor of employers, and therefore "the FLSA's remedial scheme is sufficiently comprehensive as to preempt state law in this respect."); see also LeCompte v. Chrysler Credit Corp., 780 F.2d 1260, 1264 (5th Cir. 1986) ("No cause of action for indemnity by an employer against its employees who violate the [FLSA] appears in the statute, nor in forty years of its existence has the Act been construed to incorporate such a theory. Where Congress has undertaken to regulate an area, state law must yield to the extent it is in conflict with the validly exercised federal law-making effort."); Lyle v. Food Lion, 954 F.2d 984, 987 (4th Cir. 1992); Martin v. Gingerbread House, Inc., 977 F.2d 1405, 1408 (10th Cir. 1992).

Second, the claims against Plaintiff have no basis in law and do not state a claim for relief.  The unjust enrichment claims do not allege any "unconscionable" or inequitable benefit that Plaintiffs obtained from Bimbo Bakeries.  See Camp, 2019 WL 1472586, at *1 ("Bimbo Bakeries' counterclaim fails to plausibly allege the essential elements of a viable common law claim for unjust enrichment against plaintiffs").  The breach of contract claim does not identify any enforceable contractual provision or other implied covenant that Plaintiff is alleged to have

"breached," because an agreement to waive the protections of the FLSA and work as an independent contractor is not enforceable. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707 (1945) ("We have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate.")

Third, because Defendants' counterclaim has no basis in law, it is blatantly retaliatory and must be dismissed. Defendants acknowledge through their pleadings that *but for the Plaintiffs asserting wage claims in this action*, Defendants would not be pursuing these counterclaims. Thus, the counterclaims violate the anti-retaliation provisions of the FLSA, and the claims have been asserted for the sole purpose discouraging and intimidating workers from participating in this action or otherwise asserting their rights under state and federal wage laws.

For these reasons, and as discussed in greater detail below, Defendants' unjust enrichment counterclaims should be dismissed.

## II.   **BACKGROUND**

In this action, Plaintiff worked full-time delivering breads and baked goods for Defendants Bimbo Bakeries USA, Inc. and Bimbo Bakeries Distribution, LLC (collectively, "Bimbo"). Defendants determined the territory in which the Plaintiff and other drivers worked and the prices for all products that are delivered, and require Plaintiffs and other drivers to comply with specific requirements regarding the frequency of deliveries, removal of stale product from stores' shelves, and the manner in which products are displayed at each store. Defendants also prohibit Plaintiffs from working outside of their territory or from working for any competitor of Bimbo, ensuring that they exclusively perform delivery work for Defendants. Plaintiffs allege that, although they have been classified as independent contractors, they were

actually employees under the FLSA and Maine's wage laws.  Plaintiff seeks to recover unpaid

overtime damages under the FLSA arising from Defendants' failure to pay them any overtime

pay when they work more than forty hours per week, as well as unlawful overtime pay and

unlawful wage deductions and unpaid wages under Maine law.

Bimbo has now responded to the Complaint by filing an Answer that contains an "unjust

enrichment" counterclaim against the Plaintiff.  Bimbo describes the counterclaim as follows:

> If the Court finds that Counterclaim Defendant should have been classified as an
> employee of BFBD and/or its affiliates (which it should not) and, pursuant to this finding,
> awards Counterclaim Defendant the damages demanded in the Complaint (which it
> should not), equity and good conscience require that BFBD be awarded the value of
> profits associated with Counterclaim Defendant's independent-contractor status in order
> to offset and likely exceed any award of wages and/or damages, liquidated damages, and
> other liabilities that Counterclaim Defendant may be entitled to as a purported employee.
> The value of such earnings includes, but is not limited to (1) profits Counterclaim
> Defendant generated through the sale of the products he purchased from BFBD or its
> affiliates; (2) income that Counterclaim Defendant received pursuant to the Advertising
> Agreement entered into with BFBD or its predecessor; and (3) profits generated by
> Counterclaim Defendant from any sale and/or partial sale of his distribution rights.

See Dkt. 13, Counterclaim at ¶ 29.  Similar principles underly Defendants' breach of contract

and breach of implied covenant claims.  Defendants' argument is that had they known that

Plaintiff was really an employee under the economic realities test of the FLSA and the test for

employment status under Maine's wage laws, they would have paid Plaintiff less; thus,

(according to Defendants) if there is later a finding that Plaintiff was an employee, Defendants

should be able to offset any award of unpaid wages by recouping *all compensation* that they ever

paid to Plaintiff for his years of delivery work – such that he actually will have performed all of

that work for free - arguing that Bimbo would not have paid Plaintiff to do the work if they had

known all along that he was an "employees."  Id.  at ¶¶ 29 36, 41.

III.    **STANDARD OF REVIEW**

In deciding a motion to dismiss, a complaint or counterclaim only survives if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).  Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.  In the instant case, Defendants' counterclaims fail to state a plausible claim for relief, and therefore they must be dismissed pursuant to Rule 12(b)(6).  As courts have observed, when a party moves to dismiss under Rule 12(b)(6), a claim is either objectively "good or not good," and a court lacks discretion to permit a claim that is "not good" to proceed.  See Mitchell v. E-Z Way Towers, Inc., 269 F.2d 126, 130 (5th Cir. 1959); see also Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655 n. 10 (4th Cir.2006) (holding that where the face of a complaint plainly fails to state a claim for relief, a court has "no discretion but to dismiss it"). Thus, in circumstances like these where a group of Defendants assert counterclaims that fail to state a claim for relief and where the counterclaims are prohibited as a matter of law in FLSA litigation, dismissal is the only appropriate remedy.  See generally Simpkins v. DuPage Hous. Auth., 2017 WL 1231718, at *2 (N.D. Ill. Mar. 28, 2017) (dismissing indemnification counterclaims in FLSA case because "federal law bars Defendants' counterclaim in its entirety").

## IV.   ARGUMENT

### A.   Courts Often Dismiss Counterclaims in FLSA Litigation at the Pleadings Stage

Courts routinely dismiss counterclaims and third-party claims in FLSA litigation and state law wage litigation by which Defendants seek to exclude themselves from the requirements of the wage laws by arguing that in the event of a violation, it is really the employer's workers who owe damages back to the employer.  See Camp, 2019 WL 1472586, at *1 ("Bimbo

7

Bakeries' counterclaim fails to plausibly allege the essential elements of a viable common law claim for unjust enrichment against plaintiffs"); Fernandez v. Kinray, Inc., 2014 WL 12778829, at *6 (E.D.N.Y. Feb. 5, 2014) (dismissing counterclaim for indemnification); Mori v. El Asset Management, Inc., 2016 WL 859336, at *2 n.2 (S.D.N.Y. Jan. 28, 2016) (dismissing breach of duty counterclaim and noting that a "setoff" was not permissible under the FLSA); Galicia v. Tobiko Restaurant, Inc., 2017 WL 2437260, at *2 (E.D.N.Y. June 3, 2017) (dismissing counterclaims for malicious prosecution in FLSA case); Primiani v. Vintage 185 Inc., 2019 WL 486087, at *5 (E.D.N.Y. Feb. 6, 2019) (dismissing counterclaims for breach of the duty of loyalty in FLSA case); Cordova v. FedEx Ground Package Sys., Inc., 104 F. Supp. 3d 1119, 1123-24 (D. Or. 2015) (dismissing counterclaims and third-party claims by which defendant argued that plaintiffs were unjustly enriched by agreeing to work as independent contractors and later asserting rights under the wage laws); Flores v. Mamma Lombardis of Holbrook, Inc., 942 F. Supp. 2d 274, 275 (E.D.N.Y. 2013) (granting motion to dismiss counterclaims against named plaintiffs in FLSA action seeking "contribution" towards potential damages); Nicholsen v. Feeding Tree Style, Inc., 2014 WL 476355, at *5 (S.D.N.Y. Feb. 6, 2014) (dismissing "breach of fiduciary duty" counterclaim in FLSA case for failure to state a claim); Local 1035, Int'l Bhd. of Teamsters v. Pepsi Allied Bottlers, Inc., 99 F. Supp. 2d 219, 221 (D. Conn. 2000) (holding that indemnification clause in union contract was void in regard to plaintiffs' FLSA action, and dismissing indemnification counterclaim under Rule 12(b)(6)).[2]

---

[2] See also King v. 12 Visual, Inc., 2020 WL 588285, at *2 (M.D. Fla. Feb. 6, 2020) (dismissing counterclaims in FLSA action that would deprive Plaintiffs of "cash in hand" if they were successful in the action); Nicopior v. Moshi Moshi Palm Grove, LLC, 375 F. Supp. 3d 1278, 1288 (S.D. Fla. 2019) (dismissing counterclaims in FLSA action that would "delay and interfere with the process of bringing the employer into compliance with the FLSA's overtime requirements"); Green v. Platinum Restaurants Mid-Am., LLC, 2017 WL 6347964, at *3 (W.D. Ky. Dec. 12, 2017) (dismissing unjust enrichment counterclaim in FLSA action where "it appears that no law supports Defendant's counterclaim"); McFeeters v. Brand Plumbing, Inc.,

In <u>Fernandez</u>, the court explained why dismissal of baseless counterclaims in an FLSA case is the appropriate remedy, even where it may later be shown that plaintiffs fall outside the protections of the FLSA, either because they are independent contractors or otherwise.  In that case, the defendants argued it was "premature to dismiss the counterclaim as a violation of FLSA policy, since it has not yet been determined whether the FLSA even applies…."  <u>Id.</u> at *6.[3]  The court rejected this argument and dismissed counterclaims similar to those asserted here, "since requiring plaintiffs to indemnify defendants if they lose would contravene the FLSA and NYLL's clear intent to protect plaintiffs' ability to bring suit."  <u>Fernandez v. Kinray, Inc.</u>, 2014 WL 12778829, at *8 (E.D.N.Y. Feb. 5, 2014).  The court observed the following:

> [I]t is clear that in enacting the FLSA, Congress intended to protect plaintiffs' ability to bring claims—a policy that applies before the parties know whether or not the claim will be successful….  The policy considerations that led Congress to enact the FLSA are implicated when plaintiffs assert claims, not only when plaintiffs are found to have meritorious claims.

<u>Id.</u> at *7.  Similarly, in this case Plaintiffs need not demonstrate that they will be successful on their FLSA claims in order to invoke the public policy of the statute as grounds for dismissing the counterclaims and indemnification claims at this stage of the litigation.

In addition, there do not appear to be any factual issues that could be developed in discovery that would affect Defendants' counterclaims.  For example, Defendants' alternative breach of contract claim only calls for the Court to interpret a contractual provision by which

---

2016 WL 6581515, at *3 (D. Kan. Nov. 7, 2016) (dismissing unjust enrichment counterclaim in FLSA case because "the allowance of counterclaims in a FLSA action "would delay and even subvert the whole [FLSA] process.").

[3]     Dismissal of the counterclaims in this action is decidedly *not* premature, as Defendants' entire counterclaim is based on Plaintiffs succeeding on the merits of their claims and establishing "coverage" under the FLSA.  This is not an instance like <u>Fernandez</u> where the defendants sought to delay consideration of their counterclaims until the summary judgment phase on the theory that they could succeed on their counterclaims if the plaintiffs were later found ***not to be covered*** by the FLSA.

Plaintiff purportedly agreed to work as an "independent contractor," and this counterclaim poses the straightforward legal question of whether a worker can contractually agree to work without the protections of the FLSA, such that if he asserts claims under the FLSA he can later be found to have breached that contract.  For their unjust enrichment claims, Defendants merely assert the legal theory that 1) Plaintiffs signed agreements declaring them to be independent contractors, 2) Plaintiffs were paid by Defendants to perform their work, and 3) if Plaintiffs are deemed to be employees, they have been unjustly enriched at Bimbo's expense.  There is no discovery that can illuminate whether these constitute viable legal theories; for instance, Bimbo's argument is not premised on the amounts that Plaintiffs were allegedly paid nor do they require any factfinding regarding how Plaintiffs conducted their work for Bimbo.  This is why Judge McAuliffe was able to determine at the motion to dismiss stage that Bimbo's counterclaim has no legal basis and must be dismissed.

### B.  Bimbo's Counterclaims are Prohibited by the FLSA

Bimbo's counterclaims for unjust enrichment and breach of contract are prohibited and preempted by the FLSA.

As courts have long held, "public policy disfavors counterclaims for setoff and unjust enrichment in FLSA litigation."  Saenz v. Rod's Prod. Servs., LLC, 2015 WL 12866986, at *8 (D.N.M. June 23, 2015); Martin v. PepsiAmericas, Inc., 628 F.3d 738, 741 (5th Cir. 2010) (noting that the Fifth Circuit has held "that set-offs and counterclaims are inappropriate in any case brought to enforce the FLSA's minimum wage and overtime provisions"); Perez v. S. Fla. Landscape Maint., Inc., 2014 WL 293774, at *3 (S.D. Fla. Jan. 23, 2014) (observing that the claim for setoff would "invariably cause Plaintiff not to receive the overtime payments to which he was allegedly entitled under the FLSA," and that "this type of set-off is not an appropriate affirmative defense in a FLSA case"); Saarela v. Union Colony Protective Servs., Inc., 2014 WL

3408771, at *5 (D. Colo. July 14, 2014) ("…[M]ost courts considering the issue have generally agreed that setoffs and recoupments are disfavored in FLSA suits.") (internal quotation marks and citation omitted); Jones v. JGC Dallas LLC, 2012 WL 4119570, at *4 (N.D. Tex. Aug. 17, 2012) ("breach of contract and unjust enrichment counterclaims for set-offs are not permitted in this FLSA action"), report and recommendation adopted, 2012 WL 4169685 (N.D. Tex. Sept. 19, 2012).

The reason for this rule has been described by the Fifth Circuit:

The FLSA decrees a minimum unconditional payment and the commands of that Act are not to be vitiated by an employer, either acting alone or through the agency of a federal court…. The only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards. … Set-offs against back pay awards deprive the employee of the 'cash in hand' contemplated by the Act, and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provisions, whether the suit is initiated by individual employees or by the Secretary of Labor.

Brennan v. Heard, 491 F.2d 1, 4 (5th Cir. 1974).[4]

The Second Circuit has also explicitly held that indemnification claims by which Defendants seek to indemnify themselves for violations of the FLSA by shifting liability to its workers (or an unrelated third party) are not permitted in FLSA litigation. In Herman v. RSR

---

[4]     The only narrow exception to the rule prohibiting set-offs in FLSA cases arises in instances where employers have erroneously paid the employees overtime compensation to which they were not entitled. See Martin v. PepsiAmericas, Inc., 628 F.3d 738, 742 (5th Cir. 2010). For example, in Singer v. City of Waco, Tex., 324 F.3d 813 (5th Cir. 2003), the court found that because the employer had already paid the overtime the plaintiff employees were owed (albeit during previous pay periods when the plaintiffs were not entitled to the overtime pay), these surplus overtime wages could offset the value of the wages the employees were entitled to in subsequent pay periods. Id. at 828. This exception does not apply here because Defendants do not seek to "offset" amounts that they claim were pre-paid to Plaintiffs as overtime wages. See Jones v. JGC Dallas LLC, 2012 WL 4119570, at *4 (N.D. Tex. Aug. 17, 2012) (declining to apply Singer where the amount "sought as a set-off do[es] not represent wages pre-paid to Plaintiffs or wage obligations already fulfilled"), report and recommendation adopted, 2012 WL 4169685 (N.D. Tex. Sept. 19, 2012).

Sec. Servs. Ltd., 172 F.3d 132 (2d Cir. 1999), the Second Circuit held that there is "no right of contribution or indemnification for employers found liable under the FLSA." Id. at 143-44.  The court cited four reasons supporting its holding that were "readily apparent:"

> First, the text of the FLSA makes no provision for contribution or indemnification. Second, the statute was designed to regulate the conduct of employers for the benefit of employees, and it cannot therefore be said that employers are members of the class for whose benefit the FLSA was enacted…. Third, the FLSA has a comprehensive remedial scheme as shown by the "express provision for private enforcement in certain carefully defined circumstances." Such a comprehensive statute strongly counsels against judicially engrafting additional remedies. Fourth, the Act's legislative history is silent on a right to contribution or indemnification.

Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 144 (2d Cir. 1999) (internal citations omitted). Courts in other Circuits have reached the same conclusion.  See Martin v. Gingerbread House, Inc., 977 F.2d 1405, 1408 (10th Cir.1992) ("a third party complaint by an employer seeking indemnity from an employee is preempted" by the FLSA); Lyle v. Food Lion, Inc., 954 F.2d 984, 987 (4th Cir.1992) (court should not "engraft an indemnity action upon this otherwise comprehensive federal statute," i.e., the FLSA); LeCompte v. Chrysler Credit Corp., 780 F.2d 1260, 1264 (5th Cir.1986) (same).

Indeed, if an employer could simply count on recovering the amounts it paid to workers in the event that it was later found to violate the FLSA pursuant a "breach of contract theory," employers would suffer no financial incentive to comply with the wage laws, knowing that if it was found to have violated the wage laws, it could later assert contractual claims to eliminate its damages and use its violations of the FLSA for its own financial gain.  This would quite literally "permit employers to contract away their obligations under the FLSA, a result that flouts the purpose of the statute." Gustafson v. Bell Atlantic Corp., 171 F. Supp. 2d 311, 328 (S.D.N.Y. 2001); see also Goodman v. Port Authority of New York and New Jersey, 850 F. Supp. 2d 363, 388-89 (S.D.N.Y. 2012) ("[A] holding that the indemnification clause [in a contract] is

enforceable would indeed mean that employers would have little reason to be concerned over ... [compliance] with the statutorily mandated and unwaivable overtime pay requirements of the FLSA, knowing full well that if they are later found to have violated such requirements, such employers would be totally compensated for any injuries resulting from such action.") (quoting Local 1035, Int'l Bd. Of Teamsters v. Pepsi Allied, 99 F. Supp. 2d 219, 221 (D. Conn. 2000)). Based on this reasoning, courts across the country have rejected "indemnity" counterclaims, cross claims, and third-party complaints in FLSA cases where Defendants assert the same theory that Bimbo pursues here, which is that if they are found to violate the FLSA they are not liable for damages and will recover the amount of any damages from their employees.  See, e.g., Garcia v. Cloister Apt Corp., 2018 WL 1353274, at *2 (S.D.N.Y. Mar. 15, 2018) ("under Herman and the prevailing law in this circuit, the [ ] Defendants may not, as a matter of law, sustain an indemnification cross-claim for liability under the FLSA"); see also Abdul-Rasheed v. KableLink Comm., LLC, 2013 WL 6182321, at *5 (M.D. Fla. Nov. 25, 2013) (finding that allowing defendant to enforce an indemnity provision in a misclassification case "would impose a chilling effect that would defeat the remedial purpose of the FLSA"); Villareal v. El Chile, Inc., 601 F.Supp.2d 1011, 1014-16 (N.D. Ill. Feb. 25, 2009) (dismissing indemnity counterclaim brought by employer against employee in an FLSA action); Varnell, Struck & Associates, Inc. v. Lowe's Companies, Inc., 2008 WL 1820830, at *10 (W.D.N.C. Apr. 21, 2008) ("It would indeed be unconscionable for an employer to escape liability for unlawful labor practices by having the employee agree to indemnify the employer for FLSA violations" and "to hold otherwise would be to gut the remedial nature of the FLSA."); Emanuel v. Rolling in the Dough, Inc., 2010 WL 4627661, at *4 (N.D. Ill. Nov. 2, 2010) ("Every case to consider the issue of indemnification in the FLSA context has reinforced that to allow employers to seek indemnification from their

13

employees for FLSA violations would frustrate the very purpose of the statute.").  Bimbo's indemnification claims likewise must be dismissed here.

In sum, Bimbo's state law claims for unjust enrichment and breach of contract are barred by the FLSA.  If these claims are viable, Defendants will have contracted away all of their obligations under the statute, as they will not be liable for any award of unpaid wages in the event that Plaintiff succeeds on this claims, instead recouping and recovering tens of thousands of dollars from the Plaintiff to offset his FLSA damages.  "[T]he FLSA's remedial scheme is sufficiently comprehensive as to preempt state law in this respect."  Herman, 172 F.3d at 144.

### C.  **Bimbo's Counterclaims Are Baseless**

Under Maine law, the elements of unjust enrichment are (1) a benefit conferred on defendant by plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention of the benefit in circumstances that make it inequitable for the defendant to retain the benefit without payment for the value of the benefit conferred. See Aladdin Elec. Assocs. v. Town of Old Orchard Beach, 645 A.2d 1142, 1144 (Me.1994). Through their breach of implied covenant theory and breach of contract theories, Defendants ask the court to hold that their contract contains an express or implied covenant requiring Plaintiff to work as a non-employee exempt from the protections of the FLSA.  Neither of these theories state a claim for relief, because Defendants do not allege any facts showing that Plaintiff's actions in bringing this lawsuit are somehow unjust, inequitable, or breach an enforceable agreement.

First, Bimbo's unjust enrichment claim fails to state a claim for relief because nothing alleged is "inequitable."  Bimbo's Counterclaim I alleges that should the Plaintiffs succeed in their claims that they were employees of Bimbo, they will have been unjustly enriched when Bimbo paid them certain amounts under their "agreement" to work as independent contractors. This claim is legally insufficient and fails as a matter of law for the same reasons as those that

14

were dismissed in the Camp litigation, namely they do not allege any ***inequitable benefit*** that

Plaintiffs obtained from Bimbo Bakeries.  See Camp, 2019 WL 1472586, at *1.  As Judge

McAuliffe held in Camp v. Bimbo Bakeries:

> The problem with Bimbo Bakeries' counterclaim is that it fails to plausibly allege how
> plaintiffs (if properly viewed as employees) were <u>unjustly</u> enriched, <u>at the expense of
> Bimbo Bakeries</u>. Nor does it plausibly allege that plaintiffs obtained some benefit from
> Bimbo Bakeries that would be unjust or inequitable for them to retain if they are deemed
> to have been employees.

Id. at *1 (emphasis in original).  Here, there is nothing inequitable about Bimbo having paid

amounts to Plaintiff and other drivers for the performance of their delivery work, because Bimbo

also received the "benefit" have having their products delivered and displayed in super markets,

as well as a substantial benefit by avoiding tax obligations placed on employers as a product of

its misclassification scheme.  See id. ("… Bimbo Bakeries were also 'enriched' as a result of

their relationships with plaintiffs and benefited financially from plaintiffs' efforts to both

advertise and sell Bimbo Bakeries' products.").  Bimbo's breach of contract counterclaim suffers

from the same deficiencies, as Bimbo does not allege that Plaintiff and others failed to deliver

the products to Bimbo's customers for which they received their contractual payment, and thus

there is no contractual theory that would permit Defendants to retain both the benefits under the

agreement as well as recoup all of the compensation that it was contractually required to pay.

Defendants have not set forth any facts supporting their assertion that they have suffered

any loss that is "unjust." As Judge McAuliffe held when dismissing the identical counterclaims

in the New Hampshire action, "there is no established principle of employment law that provides

employees are not entitled to retain sums paid to them by their employer to advertise the

employer's goods and/or services. Nor is there any established principle of employment law

precluding employees from retaining any profits made when they purchase an employer's

products and re-sell them at a profit….. 'Unjust enrichment' is simply a poor fit to the facts alleged in this case." Camp v. Bimbo Bakeries USA, Inc., 2019 WL 1472586, at *2 (D.N.H. Apr. 3, 2019).

Moreover, the relevant legal principles supporting the FLSA demonstrate that Plaintiff has *not* acted unconscionably or unjustly, nor can he be found to have breached a covenant in a private agreement by simply bringing this action.  Though Defendants allege that Plaintiff "agreed" to be an independent contractor – and thus agreed that he would work absent the protections of the FLSA - and has now filed suit challenging seeking unpaid wages under the FLSA, this is not "unjust."  The protections of the wage and hour laws cannot be waived by contract, nor can Defendants succeed in minimizing their liability under the statutes by merely alleging that Plaintiffs "agreed" to the arrangement that is later found to have violated the statutes.  "We have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707 (1945); see D. A. Schulte, Inc. v. Gangi, 328 U.S. 108, 114-116, (1946); Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 42 (1944); Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 577 (1974); Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740 (1981).  Thus, Defendants cannot identify any enforceable contractual provision by which Plaintiff has agreed to waive the protections of the FLSA, so their entire breach of contract theory fails. It is the "economic realities" of their relationship with Defendants, and not the terms used by the parties, which is dispositive on the question of employee status.[5]  And for this reason, Plaintiff's purported

---

[5]     See Dole v. Snell, 875 F.2d 802, 804 (10th Cir. 1989) ("Courts have adopted an expansive interpretation of the definitions relating to employment status under the FLSA, in order to effectuate its broad remedial purpose…Courts are not limited by any contractual

"agreement" to work as independent contractors and exempt himself from the overtime statutes also does not violate equitable principles; rather the "agreement" to forego the FLSA's protections is unenforceable and legally insignificant under the FLSA.  Similarly, under Maine, law it is unlawful for Defendants to knowingly misclassify their employees.  26 M.R.S. § 591-A ("An employer that intentionally or knowingly misclassifies an employee as an independent contractor commits a civil violation for which a fine of not less than $2,000 and not more than $10,000 per violation may be adjudged.").  Thus, it would undermine the purposes of the wage statutes if Defendants could shift the financial liability for its violations of state and federal law onto their employees by asserting state common law claims.  In sum, if Defendants are ultimately found liable for unpaid wages, it will be because of their own failure to comply with the clear requirements of the relevant wage statutes, not because of some prior "agreement" or unconscionable act of Plaintiffs.

The types of damages that Defendants' seek to recover further demonstrate that Bimbo does not actually seek an equitable result through its claims, but instead its counterclaims themselves undermine all principles of equity.  For example, Defendants seek to recover "advertising" payments paid to Plaintiffs to wear Bimbo gear and have a Bimbo-brand sign on their truck; however, there is no allegation that Plaintiffs failed to fulfill their obligations to wear the advertising materials.  Thus, Bimbo received its "benefit" under this portion of the

---

terminology used by the parties or by the traditional common law concepts of "employee" or "independent contractor.") (citations omitted); Usery v. Pilgrim Equip. Co., 527 F.2d 1308, 1315 (5th Cir. 1976) certiorari denied 97 S.Ct. 82 (1976), citing United States v. Silk, 331 U.S. 704, 715 (1947) ("We reject both the declaration in the lease agreement that the operators are 'independent contractors' and the uncontradicted testimony that the operators believed they were, in fact, in business for themselves as controlling FLSA employee status. Neither contractual recitations nor subjective intent can mandate the outcome in these cases. Broader economic realities are determinative.").

Agreement, and there is nothing unjust about the result.  See Camp, 2019 WL 1472586, at *1 (D.N.H. Apr. 3, 2019) ("Bimbo Bakeries were also "enriched" as a result of their relationships with plaintiffs and benefited financially from plaintiffs' efforts to both advertise and sell Bimbo Bakeries' products").  Defendants also seek to recover all of Plaintiff's earnings for the work that he performed for Bimbo, which Bimbo refers to as the "revenues" that Plaintiff earned for doing his work of taking goods from Bimbo's warehouse, delivering it to the customer who has purchased the product, and displaying it on the customer's shelf.  Again, there is no allegation in the counterclaims that Plaintiff failed to perform this work, and thus Bimbo clearly benefited from this transaction by having its product delivered to stores.  There is nothing unjust about this result, which inured to Bimbo's clear financial benefit.  See id.  The absurdity of Bimbo's position it highlighted by the fact that it is possible that Plaintiff will be found to be an employee but he may only be entitled to minimal overtime damages if a factfinder finds that he did not work substantial overtime hours; even in that instance, Bimbo takes the position that it will be able to recoup tens of thousands of dollars directly from Plaintiff  - consisting of every penny that they ever paid him in return for his delivery services  - in an amount that would dwarf his overtime damages, so that Bimbo would obtain a substantial windfall as a result of its violations of the FLSA and Maine law, while the prevailing Plaintiff in this FLSA and wage law action would be left destitute. Obviously, this is not an "equitable" result.

### D.  Bimbo's Baseless Counterclaims Should be Dismissed Because they Constitute Unlawful Retaliation

The FLSA's anti-retaliation provision states that it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]."  29 U.S.C. § 215(a)(3). Federal courts have explained that this statute "must be interpreted broadly" in order to fulfill its

purpose, Lambert v. Ackerley, 180 F.3d 997, 1003 (9th Cir. 1999) (collecting cases), which is "to prevent fear of economic retaliation by an employer against an employee who chose to voice … a grievance…." See Williamson v. General Dynamics Corp., 208 F.3d 1144, 1151 (9th Cir. 2000), quoting Lambert, 180 F.3d at 1004.[6]   Courts have routinely held that an employer's filing of baseless counterclaims against the employee in response to the employee's FLSA lawsuit constitutes actionable retaliation under the FLSA.   See, e.g., Darveau v. Detecon, Inc., 515 F.3d 334, 343 (4th Cir. 2008) (finding employer's lawsuit alleging fraud was filed with a retaliatory motive and without a reasonable basis in fact or law, and was an actionable adverse employment action under FLSA, noting "a plaintiff asserting a retaliation claim under the FLSA need only allege that his employer retaliated against him by engaging in an action 'that would have been materially adverse to a reasonable employee.'); Flores v. Mamma Lombardis of Holbrook, Inc., 942 F. Supp. 2d 274, 279 (E.D.N.Y. 2013) ("The court disagrees with Defendants and holds that the filing of a baseless pleading can, under certain circumstances, constitute adverse employment action sufficient to state a claim for retaliation."); Beltran v. Brentwood N. Healthcare Ctr., LLC, 426 F. Supp. 2d 827 (N.D. Ill. 2006) ("We recognize that an employer's lawsuit filed with a retaliatory motive rather than in good faith may constitute an adverse action and provide a basis for a retaliation claim."); Beltran v. Brentwood N. Healthcare Ctr., LLC, 426 F. Supp. 2d 827

---

[6]         In Mitchell v. Robert DeMario Jewelry, Inc., the Supreme Court explained the critical importance of the FLSA's anti-retaliation provision:

> For weighty practical and other reasons, Congress did not seek to secure compliance with prescribed standards through continuing detailed federal supervision or inspection of payrolls. Rather it chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied.... [I]t needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions.

361 U.S. 288, 292-93 (1960).

(N.D. Ill. 2006) ("We recognize that an employer's lawsuit filed with a retaliatory motive rather than in good faith may constitute an adverse action and provide a basis for a retaliation claim."); Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008) ("Bad faith or groundless counterclaims … against employees who assert statutory rights are actionable retaliation precisely because of their *in terrorem* effect."); Munroe v. Parts Base, Inc., 2008 WL 4998777 (S.D. Fla. Nov. 20, 2008) ("By suing an employee who files charges . . . an employer can place its employees on notice that anyone who engages in subjecting himself to the possibility of a burdensome lawsuit.").

Here, Bimbo has filed a counterclaim against Plaintiffs in direct response to their FLSA complaint filed in federal district court brought to vindicate their statutory rights and, despite the fact that there is a federal district court decision from less than one year ago directly on point finding that this identical claim by Bimbo asserted against another group of workers failed to state a claim for relief.  Thus, Defendants' claim to offset Plaintiffs' potential damages in this case by recouping all payments that it made to Plaintiff for the work that he performed  is baseless and serves a purely retaliatory purpose, as the counterclaim has been filed *expressly* because the Plaintiffs brought this action to assert their wage rights under the FLSA, and Judge McAuliffe has already dismissed the identical theory in the Camp case.  Therefore, the Court should dismiss Bimbo's counterclaims where they constitute unlawful retaliation.

## V.    **CONCLUSION**

For the reasons set forth above, the Court should DISMISS Defendants' counterclaims.

Dated: September 17, 2020                 Respectfully submitted,

                                          CHAD HELMS on behalf of himself and all others
                                          similarly situated


                                          By his attorneys,


                                           _/s/ Matthew Thomson_____

                                          Harold L. Lichten (*pro hac vice*)
                                          Matthew W. Thomson (*pro hac vice*)
                                          Zachary L. Rubin (*pro hac vice*)
                                          LICHTEN & LISS-RIORDAN, P.C.
                                          729 Boylston St. Suite 2000
                                          Boston, MA 02116
                                          (617) 994-5800
                                          Fax (617) 994-5801
                                          hlichten@llrlaw.com
                                          mthomson@llrlaw.com
                                          zrubin@llrlaw.com


                                          Benjamin I. Grant (Bar No. 3355)
                                          Kaplan & Grant
                                          136 Commercial Street, Suite 302
                                          Portland, Maine 04101
                                          (207) 780-6700
                                          bgrant@kaplanandgrant.com



## CERTIFICATE OF SERVICE

I hereby certify that the foregoing on September 17, 2020, I caused a copy of this

document to be served by through the Court's ECF system to all counsel of record.


                                          */s/ Matthew Thomson*_____
                                          Matthew Thomson